**BEACH v. ILLINOIS LUMBER MFG. CO.**
Civ. No. 1625.

United States District Court
E. D. Illinois.
Nov. 21, 1949.

Supplemental Opinion Jan. 17, 1950.

Anderson, Gilbert, Wolfort, Allen & Bierman, St. Louis, Mo., Norman Bierman, St. Louis, Mo., of counsel, Whitnel & Walker, East St. Louis, Ill., Ralph D. Walker, East St. Louis, Ill., of counsel, for plaintiff.

John Holland, Cairo, Ill., Baker, Lesemann, Kagy & Wagner, East St. Louis, Ill., Harold G. Baker and Leigh M. Kagy, East St. Louis, Ill., of counsel, for defendant.

WHAM, Chief Judge.

The plaintiff, John M. Beach, at the time of the occurrences involved in this lawsuit was a manufacturers' representative located at Dayton, Ohio, experienced in selling wood and lumber products and was registered as such manufacturers' representative at Wright Field. The defendant was an Illinois corporation located at Cairo, Illinois, engaged in the lumber business and in the manufacture of wood and timber products. The plaintiff solicited defendant by telephone to become its sales agent and commercial representative in connection with Government contracts for manufactured wood products. The defendant showed interest and, at plaintiff's request, wrote him a letter stating what it could do and its capacity. Thereafter, plaintiff visited and inspected defendant's plant on March 30, 1945. On this visit plaintiff explained to the officials of the defendant his past experience in the furniture business and in selling wood products. He stated that he was registered at Wright Field as a manufacturers' representative and that he had obtained Government contracts for other clients to manufacture such items as a certain collapsible storage bin made of plywood, plans for which he had with him and displayed. He asked defendant's officials if they were interested in quoting on the bins and suggested that, if they were, they write him a letter. Defendant's president raised a question about restrictions on

Government contracts secured by an agent on a commission basis and the plaintiff said there were such restrictions but that they were not applicable to agents like himself who were qualified to sell and who were known to the Government as bona fide manufacturers' agents. On April 2, 1945 the defendant wrote the plaintiff a letter containing an offer of employment as follows:

"Dear Mr. Beach:

"Following your trip to our plant on March 30, at which time you brought in plans for plywood bins, this is very much the type of work that we are interested in quoting on.

"We would like to authorize you to solicit inquiries for us and act as our representative not only in the sale of the item but in all contact which is necessary with the Government officials at the field and help us with the securing of materials and finding sources of supply for manufactured items other than what we make ourselves.

"On any inquiries which you submit and on which we get an award, we agree to allow you a 5% commission for these services. Payment of commission to you is to be made after we have received settlement of our invoices.

"Very truly yours,

"Illinois Lumber Manufacturing Co.
By (Signed) F. K. Wheeler"

The plaintiff accepted the offer of employment and acted on it by interviewing Government officials at Wright Field, determining their needs and advising defendant with reference to various contracts upon which defendant might be interested in bidding. He assisted defendant in getting information about and submitting bids on various items being purchased by the Government including bids on two subcontracts on one of which defendant secured the award and paid plaintiff a five per cent commission thereon. Plaintiff aided defendant in preparing and submitting a bid at Wright Field as prime contractor for the manufacture of collapsible engine boxes. Plaintiff took the representatives of defendant to Wright Field, using his pass and identification card as a registered manu-facturers' agent for gaining admittance and, as such agent, with the knowledge of the Government officers as to his relationship with the defendant helped defendant obtain the information necessary for preparation of the bid on the contract for collapsible engine boxes. Included in the break-down of figures submitted to the Government with this bid was a five per cent commission for plaintiff. The bid resulted in an award to defendant by the United States of a letter contract dated May 2, 1945, which was later superseded by a formal lump sum fixed-price contract No. W33-038ac-11082(14531) dated June 30, 1945, in the amount of $1,679,400. Before the formal contract was signed, defendant considered Article 11 therein which reads: "Article 11. Covenant against Contingent Fees.—The Contractor warrants that he has not employed any person to solicit or secure this contract upon any agreement for a commission, percentage, brokerage, or contingent fee. Breach of this warranty shall give the Government the right to annul the contract, or, in its discretion, to deduct from the contract price or consideration the amount of such commission, percentage, brokerage, or contingent fees. This warranty shall not apply to commissions payable by contractors upon contracts or sales secured or made through bona fide established commercial or selling agencies, maintained by the Contractor for the purpose of securing business."

Defendant consulted its attorney in Cairo, Illinois, who was an able and widely experienced lawyer of high standing, about the effect of its commission agreement with plaintiff upon its rights under the contract with the Government in view of said Article 11. It was advised that its rights under the contract were not affected since the commission agreement was valid under the provisions of the last sentence of Article 11. He advised defendant, however, to make full disclosure of all facts to the contracting authorities at Wright Field. Plaintiff and a representative of defendant went to all proper officials at Wright Field, including the office of the Judge Advocate General, made full disclosure of all facts

concerning the relation between them and endeavored to secure approval of the representation of defendant by plaintiff on a commission basis. While no formal approval was given, no objection was expressed or indicated and the procurement officers, knowing all the facts, urged immediate signing of the contract by defendant. Plaintiff assured defendant that it was a valid arrangement. Defendant authorized plaintiff, as its agent, to sign the formal contract for defendant and the Government accepted the contract so signed.

Thereafter, plaintiff, pursuant to his agreement with defendant, through his special knowledge of sources of materials and means of securing priorities, assisted defendant in securing certain required materials and supplies; also through his special skill and experience aided in the design of certain parts, secured necessary changes in contract specifications, secured for defendant from the proper authorities instructions and directions for the fulfillment of said contract and performed other needed services. Without the services of plaintiff defendant would have been unable to secure or perform its said contract with the Government. Plaintiff used no influence in obtaining the contract for defendant and it was not intended or contemplated by plaintiff or defendant at the time of plaintiff's employment or thereafter that he should secure any business for plaintiff through influence or upon any other basis than the merit of the bids submitted by defendant. It was intended that plaintiff through his special skill and knowledge should find opportunities for bidding for work, assist in preparing and submitting bids, and in securing materials and priorities necessary to the performance of any contracts that might be awarded. These things the plaintiff did.

On August 17, 1945, the United States terminated its contract with the defendant and, thereafter, defendant, with the aid and assistance of plaintiff, obtained a reinstatement of a portion of the contract. On May 17, 1946, said reinstated portion of defendant's contract was terminated by the United States. On January 31, 1946, defendant settled the partial termination of its contract with the Government and on July 31, 1946 settled the final termination of its contract. In the negotiation of each of the termination settlements defendant, at the request of plaintiff, included in its claim a commission for plaintiff. It endeavored to have included a five per cent commission for the plaintiff on the amount of the settlement. The representatives of the Government refused to permit such inclusion. In each of the settlement agreements defendant reserved and was permitted to reserve the right to payment by the United States should it be determined that plaintiff was entitled to recover from defendant on his contract and reserved for plaintiff the right to present to the Government on his own behalf his claim under his contract with defendant. At a later time plaintiff, having in the meantime secured representation by counsel, with the fullest possible aid of defendant, had his claim presented to the Government contract authorities. His claim was presented on the theory that under the provisions of his contract with defendant, including his obligation to help find and procure materials and supplies and to render other essential services, he was a subcontractor in relation to the Government contract and his claim should be so dealt with by the termination authorities. The termination authorities refused to recognize him as a subcontractor and denied his claim on the ground that the arrangement between plaintiff and defendant was a violation of Article 11 of defendant's contract with the Government.

As defendant received payment from the Government on invoices for completed boxes under the original and reinstated contracts it had paid plaintiff five per cent of the amounts so received. The total amount so paid defendant was $10,208.79. The gross amount received by defendant from the Government on the settlement of its first termination claim was $77,507.65 and on the second and final termination claim, $43,289.75. Plaintiff received no commission on either of those amounts nor has he been paid or tendered any payment for his services under the contract with defendant except said $10,208.79. This suit is brought to obtain judgment against de-

fendant for whatever additional amount, if any, defendant is obligated to pay plaintiff under its aforesaid contract with him.

When the complaint was filed on April 14, 1948, the United States assumed responsibility for the defense and the United States district attorney, counsel for defendant joining therein, filed an answer and counterclaim on behalf of defendant. Subsequently, due to differences that arose between Government contract officers and said United States attorney with reference to the rights of the Government and the plaintiff, respectively, the district attorney withdrew from the defense of the case. Thereupon, defendant, by its own counsel, by leave of court, filed an amended answer. Thereafter, counsel for defendant died. Defendant then employed its present counsel who, with leave of court, filed an amended and supplemental answer with reservation therein of right to file a counterclaim for the amount already paid plaintiff if the contract between plaintiff and defendant should be held invalid in relation to said Government contract by reason of said Article 11.

After the differences arose between the Government contract officers and the United States attorney said Government officers declared their intention of finding the contract between plaintiff and defendant invalid under said Article 11 and ordering defendant to repay to the Government the $10,208.79 already paid by defendant to plaintiff as commissions. Later such findings and order were formally made and entered and are now pending on an appeal by defendant before the Army Board of Contract Appeals.

In this suit plaintiff seeks to recover from defendant $73,761.21 which is five per cent of $1,679,400.00, the entire amount of the original Government contract award, less the amount of $10,208.79 he received as aforesaid in commission payments from defendant as the invoices for completed boxes were paid. His theory is that he has substantially fulfilled his obligation under his contract with the defendant and, therefore, under its terms defendant owes him five per cent of the entire amount of the award; that his contract with the defend-

ant is valid and enforceable under the last sentence of Article 11 of the Government contract; that his contract is with the defendant alone, however, and not with the Government, and that his rights against the defendant are unaffected by any dispute between the defendant and the Government concerning his commission or by the termination by the Government of its contract with the defendant. Defendant answers that it owes plaintiff nothing for the reason that it paid him all he was entitled to receive under the terms of its contract with him when it paid him five per cent on all the payments received by it on invoices for completed boxes; that plaintiff is not entitled, under the terms of the contract, to five per cent on the full amount of the award or upon any part of it except that covered by paid invoices; that he is not entitled to receive anything on the amounts received on the termination settlements; further, and in the alternative, that if plaintiff is entitled to any judgment against defendant such recovery should not exceed an amount of five per cent of the sums received by defendant under the aforesaid termination settlements. Defendant further contends that it is under no obligation to pay plaintiff any commission of which the Government refuses approval.

The rights between plaintiff and defendant depend upon the meaning of the letter of April 2, 1945 which was defendant's offer to employ plaintiff and became the written contract when accepted by the plaintiff. The plaintiff substantially performed his agreement with defendant both generally and with reference to defendant's said contract with the Government up to the time of the final termination of the reinstated portion of the contract. What further he would have been required to do in relation to the contract had defendant not been prevented from fulfilling it and whether he would have substantially complied with his duties to the end cannot be known. Defendant fully performed its part of its contract with plaintiff up to the time of the termination of the reinstated portion of the Government contract by paying him five per cent of the amounts it received from the Government on its in-

voices. Does it have further duties to plaintiff?

To earn the commission which he seeks to recover in this case plaintiff found and helped defendant secure the award of the contract with the Government here in question which was terminable at the will of the Government. He did not secure a contract that could be enforced by defendant for the full amount of the award or for any part beyond termination, except to the extent allowed by the provision for termination settlement.

■ Both parties knew that all Government contracts contemplated by their agreement would be subject to termination which, if exercised, would prevent plaintiff from servicing and the defendant from completing and being paid for the entire contract. The award in such case upon which plaintiff is entitled to a commission is measured by the extent of defendant's performance under the contract permitted by the Government. This is the reasonable interpretation of the language of the agreement as a whole without considering the last sentence of the letter which provides that payment of commission should be made after defendant had received settlement of its invoices. A consideration of two parts is required of plaintiff before he has earned his agreed commission, namely, his aid in finding and securing the contract and his aid in the performance of the contract. His aid in performance could be given only to the extent of the performance permitted. Plaintiff's contention that he had so completely performed his part of the agreement as to be entitled to a commission on the entire award and that the provision for the payment of the commission after invoices paid but fixed the time when the commission on the entire award would become fully due is untenable.

■ Is plaintiff entitled to commission on the amounts received in the termination settlements? It seems clear that the work under the Government contract which defendant had opportunity to perform included not only the completed boxes, payment for which was received upon presentation of its invoices, but everything else defendant did and performed for the purpose of carrying out its contract which was dealt with and paid for in the termination contracts. Such settlements would seem to come within the broad meaning of payment of invoices as used in the letter of April 2, 1945, as applied to a terminable contract with the Government. The termination of such a contract contemplates a reasonable profit to the manufacturer over valid costs. The defendant's obligation to pay a commission to plaintiff in this case extended to all the defendant did under the contract for which it was paid. The plaintiff is entitled to a five per cent commission on the amounts received by defendant in the termination settlements.

■ Under the evidence the agreement between plaintiff and defendant came clearly within the meaning of the last sentence of said Article 11 of defendant's contract with the Government. Plaintiff was employed generally to drum up business for the defendant, not to secure a specific contract with the Government and not to secure any business with the Government through the use of influence. No influence was intended by either party to be used by plaintiff in securing a contract and none was used. At the time he was employed by defendant plaintiff was an established manufacturers' agent equipped by knowledge and experience to render the services the commission agreement called for. He rendered those services to defendant pursuant to agreement until the termination of the contract. By the terms of the agreement plaintiff became the bona fide selling agent of the defendant. At the time of his employment plaintiff was a bona fide, established selling agency engaged in representing more than one contractor in dealing with other parties generally. In the sense that plaintiff depended for maintenance on defendant and others like defendant who paid him commissions on work secured by him as such agency he was an established commercial or selling agency maintained by plaintiff and others like it for the purpose of securing business in a customary and legitimate way.

In view of the facts hereinbefore set forth, the validity of the commission contract between plaintiff and defendant by reason of the exception contained in the

last sentence of Article 11 of the contract is clearly indicated by the court's opinion in the leading case of Reynolds v. Goodwin-Hill Corporation, 2 Cir., 154 F.2d 553. It is, therefore, unnecessary to consider the rights between plaintiff and defendant as they would have existed had the contract between them offended said Article 11 of the Government contract under the law.

I am unable to find any support for plaintiff's contention that he has the status of a subcontractor under defendant's contract with the Government.

Plaintiff is entitled to a judgment against defendant for $6,039.87, being five per cent of $120,797.40 which defendant received from the Government in settlement of its termination claims. His claim for a commission upon any part of the award beyond the termination settlements is denied. Judgment accordingly.

## Supplemental Opinion

After my decision in the above case, entered on November 21, 1949, and at the time of submission of proposed findings, conclusions and decree, counsel for the defendant, at the request of government authorities, presented for my consideration an opinion of the United States Court of Appeals for the Fifth Circuit in the case of The United States of America v. Paddock, 178 F.2d 394. I find said opinion inapplicable to the facts presented here. In the Paddock case it is stated that the Production Engineering Company was initially established for the purpose of procuring government contracts, and that no substantial amount of the sums paid to it by the Globe Aircraft Corporation was for services other than that of procuring contracts with the Government on contingent fees. Here, plaintiff, at the time of his employment was a bona fide established selling agency engaged in representing more than one contractor in dealing with other parties generally. He was equipped by knowledge and experience to render the services the commission agreement called for. His employment was not to secure a specific contract with the Government but to drum up business generally and to act as defendant's expediter on the contracts he procured. It was intended by the agreement that plaintiff, through his special skill and knowledge, should find opportunities for bidding for work, assist in preparing and submitting bids, and in securing materials and priorities necessary to the performance or any contracts which he might obtain. This plaintiff did, procuring and servicing contracts for the defendant with private industry as well as securing and expediting the government contract involved here. In light of the above facts which distinguish the work this plaintiff agreed to and did perform from that performed by the Production Engineering Company in the Paddock case, I believe it would be error to give to the word "maintained" the controlling force that it is given in said case. To hold that all expenses and the sole support of the procuring party must come from the Contractor is, in effect, to hold that only the Contractor itself, acting through its employees or departments, is within the exception of Article 11. This would render meaningless the phrase "bona fide established commercial or selling agencies". I therefore adhere to the decision I have heretofore reached—that in the sense that plaintiff depended for maintenance on defendant and others like defendant who paid him commissions on work secured by him, he was an established commercial or selling agency maintained by defendant and others like it for the purpose of securing business in a customary and legitimate way.