## HAZELTON v. SHECKELLS.[1]

APPEAL FROM THE COURT OF APPEALS OF THE DISTRICT OF
COLUMBIA.

No. 225.   Argued April 12, 1906.—Decided April 23, 1906.

Every part of the consideration for a contract goes equally to the whole promise, and if any part of it is contrary to public policy the whole promise falls.

A contract to deliver property at an agreed price within the duration of a specified session of Congress, it being understood that a part of the consideration is that the person to whom the property is to be conveyed is to endeavor to sell it to the United States and to procure legislation to that end—he not being under obligation to take and pay for the property—is void as against public policy and specific performance will not be enforced.

THE facts are stated in the opinion.

*Mr. Heber J. May* for appellant:

The appellant is entitled to a decree of specific performance in equity. It is not enough that there is a remedy at law; it must be plain and adequate, or in other words, as practical and as efficient to the ends of justice and its prompt administration, as the remedy in equity. *Tyler* v. *Savage*, 143 U. S. 79, 95; *Lewis* v. *Cocks*, 23 Wall. 466, 470; *Buzard* v. *Houston*, 119 U. S. 347, 352; *Insurance Co.* v. *Bailey*, 13 Wall. 616, 621; *Drexel* v. *Berney*, 142 U. S. 241, 252; *Cathcart* v. *Robinson*, 5 Pet. 264; *Bayse's Executors* v. *Grundy*, 3 Pet. 210.

The controversy here is solely between the appellant and appellee, and no third person can be affected by its settlement in equity, and equity will look through the form of the transaction and adjust the equities of the parties. *Drexel* v. *Berney*, 122 U. S. 241, 254; *Smith* v. *Felton*, 43 N. Y. 419; *Willard* v. *Tayloe*, 8 Wall. 557; *Hodges* v. *Kowing*, 58 Connecticut, 12.

---

[1] Originally docketed as *Hazelton* v. *Miller*.

The attempt of the appellee to arbitrarily avoid the performance of his agreement comes clearly within the doctrine of this court laid down in *Union Pacific Ry. Co.* v. *Chicago &c. Ry. Co.*, 163 U. S. 564, 600. The exercise of jurisdiction by courts of equity prevents the intolerable travesty of justice involved in permitting parties to refuse performance of their contracts at pleasure by electing to pay damages for the breach.

The rule laid down in the text-books upon the subject is in consonance with the decisions, and both justify a court of equity in exercising jurisdiction. Story's Equity Jur. § 746.

Compensation for damages would not be adequate relief. Snell's Equity, p. 461; Willard's Eq. p. 279.

The contract was not against public policy. The case presented is different from that in *Tool Co.* v. *Norris*, 2 Wall. 45, and that in *Marshall* v. *B. & O. R. R. Co.*, 16 How. 314. There was nothing in the nature of contingent compensation or for the performance of any services before Congress, and the case falls within the class of those held valid in *Taylor* v. *Bemiss*, 110 U. S. 42; *Stanton* v. *Embrey*, 93 U. S. 546, and *Nutt* v. *Knut*, 200 U. S. 12.

The allegations of the bill, which are admitted by the demurrer, show that neither the committees of Congress nor Congress itself, was misled by anything the appellant did in the transaction with them, nor was there any attempt on the part of appellant to mislead them. His labors, performed partially at their request, undoubtedly served to furnish reliable information in fixing the location and purchase of the site for a hall of records, and aided in the passage of statutes upon the subject which are well guarded in their provisions, and the very provisions of which repel the suggestion of fraud or misguidance in their enactment. 32 Stat. 1039, 1212, § 16. The statutes, as the result of the transaction, are beneficial to the interest of the United States and not injurious to it. There was no design to prejudice the public interest, and such design must clearly appear to warrant a court in denouncing a contract void. *Richardson* v. *Mellish*, 2 Bing. 229, 243; *Nichols* v. *Cabe*,

3 Head (Tenn.), 92, 96; *Hertz* v. *Wilder*, 10 La. Ann. 199; Greenhood on Pub. Pol., rule 129, p. 116. See also *Richardson* v. *Dubuque and Sioux City R. Co.*, 26 Iowa, 191, 202; *Kellogg* v. *Larkin*, 2 Pinney (Wis.), 123; *Swann* v. *Swann*, 21 Fed. Rep. 299.

The objection that a contract is void by reason of public policy is not entertained out of regard for the party making it, but to promote the public interest. Greenh. Pub. Pol. 126; *Kelton* v. *Milliken*, 2 Cold. (Tenn.) 410, 415; *Stillman* v. *Looney*, 3 Cold. 20, 22; *Kimbrough* v. *Lane*, 11 Bush (Ky.), 556, 564; *Summerlin* v. *Livingston*, 15 L. & Am. 519.

It must be found that the agreement here, or the allegations of the bill, make out such a case as will avoid the transaction for the sake of public policy; or to avoid injury to the public, without reference to the conduct of individuals. *Shrewsbury & Birmingham R. Co.* v. *London &c. R. Co.*, 4 Delg. M. & G. 115, 135; *Simpson* v. *Lord Howden*, 1 R. Cases, 326, App. 335.

But, even if this contract can be construed to be one for the performance of service before a legislative body or its committees for a contingent compensation, it is not against public policy and it is valid and binding upon the appellee.

In *Lyons* v. *Mitchell*, 36 N. Y. 235, it is said that it is allowable to employ counsel to appear before the legislature itself, to advocate or oppose a measure in which the individual has an interest, for an honest purpose, avowed to the body before which the appearance is made, and by the use of just argument and sound reasoning. See also *Trist* v. *Child*, 21 Wall. 441, 450; *Howland* v. *Coffin*, 47 Barb. 653, where it is said that where an agent is employed to negotiate with the Government, it would be presumed that it was the contemplation of the parties that he should use only proper methods in transacting the business.

Interested claimants, whose interests are to be affected by legislation, may, both morally and legally, for the protection and advancement of their own interests, use all means of persuasion which do not come too near bribery or corruption; but the promise of any personal advantage to a legislator would be

void.  2 Parsons Contracts 6th ed. 919; *Marshall* v. *B. & O. R. R. Co.*, 16 How. 314; *Harris* v. *Roof*, 10 Barb. 489; *Coppeck* v. *Bower*, 4 M. & W. 361; *Fuller* v. *Dame*, 18 Pick. 472; *Hatzfield* v. *Gulden*, 7 Watts, 152; *Gulick* v. *Ward*, 5 Halst. 87.

This court has uniformly held contracts with attorneys for contingent fees to prosecute claims against the Government, either in courts, before the departments, or before Congress, valid where the contracts provided for and the services rendered were only legitimate professional services, and has consistently drawn the distinction between that class of contracts and contracts that contemplate the use and exercise of personal influence or lobby services, or where such influences or services have been rendered. *Wylie* v. *Cox*, 15 How. 416; *Marshall* v. *B. &. O. R. R. Co.*, 16 How. 335; *Tool Co.* v. *Norris*, 2 Wall. 45; *Trist* v. *Child*, 21 Wall. 441; *Wright* v. *Tibbets*, 91 U. S. 252; *Stanton* v. *Embrey*, 93 U. S. 548; *Oscanyan* v. *Arms Co.*, 103 U. S. 261; *Taylor* v. *Bemiss*, 110 U. S. 42; *Ball* v. *Halsell*, 161 U. S. 80; *Spalding* v. *Mason*, 161 U. S. 375; *Nutt* v. *Knut*, 200 U. S. 12; *Kansas Pacific Ry.* v. *McCoy*, 8 Kansas, 359; *McBratney* v. *Chandler*, 22 Kansas, 482.

The agreement is not objectionable on the ground of want of mutuality.  If it were, it was cured by the election of the appellant to purchase under the contract within the time specified therein, and having notified the appellee of such election and tendered him the purchase money, a contract of sale between the parties was thereby perfected, and a court of equity will decree the specific execution thereof.  *Young* v. *Paul*, 10 N. J. Eq. 401, 406; *Richards* v. *Green*, 26 Connecticut, 536; *McFarson's Appeal*, 11 Pa. St. 503; *Smith and Fleck's Appeal*, 69 Pa. St. 474; *Grove* v. *Hodges*, 55 Pa. St. 504, 516, 517; Fry on Spec. Perf. §§ 297, 298, 299; Waterman on Spec. Perf., 267, 268, note 1; *Willard* v. *Tayloe*, 8 Wall. 557; *Brown* v. *Slee*, 103 Wisconsin, 828; *Watts* v. *Kellar*, 56 Fed. Rep. 1; 22 Am. & Eng. Ency. of Law 1st ed., 910–913, 925, par. 3; *Brewer* v. *Herbert*, 30 Maryland, 301; *Sedgwick* v. *Stanton*, 14 N. Y. 289; *Raymond* v. *San Gabriel Co.*, 53 Fed. Rep. 885.

The wife was not a necessary party. There is nothing in the record to show that the defendant has a wife, much less that she has refused to sign a deed. It is a simple case of repudiation. *Barbour* v. *Hickey,* 2 App. D. C. 207, has no application here. At that time the wife was compelled to separately acknowledge the deed. This has been abolished. Section 493, Code D. C. See *Young* v. *Paul,* 10 N. J. Eq. 401.

No relief is or could be sought against her. She is not a party to the contract. Fry on Spec. Perf. § 299; *Wood* v. *Griffith,* 1 Swanst. 55; 2 Story, Eq. Jur. § 779; *Clark et al.* v. *Reins,* 12 Gratt. 98; *Cady* v. *Gale,* 5 W. Va. 547, 565. It is true that the deed prepared for the defendant to sign contains the surname of his supposed wife, but it was not necessary to make and tender any such deed. *Willard* v. *Tayloe,* 8 Wall. 572.

*Mr. J. J. Darlington* for appellee:

The agreement sued upon, not being mutually enforcible, was not one to be specifically enforced in equity. *Marble Company* v. *Ripley,* 10 Wall. 359. No attempt is made to sustain the burden which the law casts upon an attorney, dealing with his client, to show that the contract was in all respects a fair one, and that the latter's interests were fully protected. *Gibson* v. *Jeyes,* 6 Ves. 268; *Savery* v. *King,* 5 H. L. C. 655; *Hunter* v. *Atkins,* 3 Myl. & K. 113, 135; *Dunn* v. *Record,* 63 Maine, 17; *Burnham* v. *Hezelton,* 82 Maine, 495.

The jurisdiction for specific performance extends only to cases in which "the specific thing or act contracted for, and not mere pecuniary compensation," is the remedy or redress necessary to the complainant's relief. Adams Eq. *83.

A contract, not to prosecute before Congress, acting in a *quasi* judicial capacity, a claim of right, but to seek to obtain from it, in its purely legislative capacity, and for a contingent compensation, a contract of purchase or other advantage or benefit to which the other party to the contract has no legal claim, is against public policy and void.

Of the many instances in which this court, and other courts, have sustained agreements for contingent fees for services before Congress and before the departments, the cases, without exception, involved contracts for the prosecution of claims for the collection of debts. They are, without exception, cases for the prosecution of legal causes of action, tried before courts wherever there were courts possessing the jurisdiction to try them, and before Congress and the departments, where, because of the absence of such jurisdiction in the courts, those bodies were appealed to in a *quasi* judicial capacity, not to make laws, but to pass upon the merits of money demands, and to award execution or provide for their payment to the extent that they were found just and legal. See *Ball* v. *Halsell*, 161 U. S. 80. A claim is "a demand of some matter as of right made by one person upon another, to do or to forbear to do some act or thing as a matter of duty." *Priggs* v. *Pennsylvania*, 16 Pet. 615, and a contingent fee contract with relation to it is legal.

Any agreement for a contingent fee, to be paid on the passage of a legislative act, would be illegal and void, because it would be a strong incentive to the exercise of personal and sinister influences to effect the object. It matters not that nothing improper was done, or was expected to be done, by the plaintiff. It is enough that such is the tendency of the contract, that it is contrary to sound morality and public policy, leading necessarily, in the hands of designing and corrupt men, to improper tampering with members, and the use of an extraneous, secret influence over an important branch of the Government. *Clippenger* v. *Hepbaugh*, 5 W. & S. 315; *Marshall* v. *B. & O. R. R. Co.*, 16 How. 314; *Wood* v. *McCann*, 6 Dana (Ky.), 266.

The law meets even the suggestion of evil, and strikes down the contract from its inception. *Tool Company* v. *Norris*, 2 Wall. 45; *McMullen* v. *Hoffman*, 176 U. S. 648.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a bill for the specific performance of a contract dated

December 11, 1902, to sell for nine thousand dollars, at any time during the then present session of Congress, "and such additional time as may be necessary for settlement under appropriation by that Congress," part of a lot in a square which Congress now has voted to acquire for the erection of a hall of records. The bill was brought against one Miller. Recently Miller's death was suggested and his heirs and devisees were substituted, but for convenience Miller will be referred to as the defendant.

The contract provided that if Hazelton should "fail to take advantage of and accept this offer as above within the time mentioned, then this agreement shall be null and void." The bill alleges that a part of the consideration for the contract "was services rendered both before and after the making of said contract, by the plaintiff in bringing the property to the attention of the committees of Congress as a suitable and appropriate site for a hall of records." It sets forth that the plaintiff, before and after the same date, expended much time, labor and money in rendering those services, and what they were, viz., collecting and printing facts for the information of the committees and members of Congress, making briefs and arguments, and drawing a bill for the purchase or condemnation of the square. The bill passed at the session named in the contract. After its passage the plaintiff negotiated, and finally, in August, 1903, concluded a sale of the property in question for $14,395.50, subject to examination of the title and arrangements for payment. It is alleged that the time for settlement under the appropriation has not expired. The bill further alleges that the defendant has notified the plaintiff that he does not intend to keep his contract, but means to convey directly to the United States, and to demand the full price agreed upon by the Government. The defendant has tendered a deed to the United States, which has not been accepted. The plaintiff has offered to the defendant a deed to be executed by the latter and his wife, and tendered $9,000, but the defendant has refused to execute the same. There was a general

demurrer to the bill, and this was sustained by the Supreme Court of the District and the Court of Appeals, and the bill was dismissed. The plaintiff appealed to this court.

We assume that the bill sufficiently shows an acceptance of the defendant's offer within the time, although it does not allege it in terms. We assume also that the consideration is alleged sufficiently, subject to the question whether it is one upon which a contract lawfully may be based. But the court is of opinion that that question must be answered in the negative. Every part of the consideration goes equally to the whole promise and therefore, if any part of it is contrary to public policy, the whole promise falls. Pickering v. Ilfracombe Ry. Co., L. R. 3 C. P. 235, 250; Harrington v. Victoria Graving Dock Co., 3 Q. B. D. 549; Woodruff v. Hinman, 11 Vermont, 592; Clark v. Ricker, 14 N. H. 44; McMullen v. Hoffman, 174 U. S. 639; Bishop v. Palmer, 146 Massachusetts, 469, 474. According to the bill, and no doubt according to the fact, a part of the consideration was services, as we have quoted, and therefore it is not true, as argued, that the plaintiff could have demanded a conveyance on tendering the nine thousand dollars alone. But the services contemplated as a partial consideration of the promise to convey were services in procuring legislation upon a matter of public interest, in respect of which neither of the parties had any claim against the United States. An agreement upon such a consideration was held bad in Tool Co. v. Norris, 2 Wall. 45. Of course we are not speaking of the prosecution of a lawful claim.

It will be noticed further that the conveyance was in substance a contingent fee. The plaintiff was not bound to accept it and naturally would not do so unless he could agree as he did with the Government for a larger price. The real inducement offered to him was that he would receive all that he could persuade the Government to pay above the sum named. It is true that if we take the inartificial statements of the bill literally the part of the consideration which we are discussing was the services, not a promise to render them. The promise to

convey did not become binding until the services were rendered, and, when rendered, according to the allegations of the bill they were legitimate. We assume that they were legitimate, but the validity of the contract depends on the nature of the original offer, and whatever their form the tendency of such offers is the same. The objection to them rests in their tendency, not in what was done in the particular case. Therefore a court will not be governed by the technical argument that when the offer became binding it was cut down to what was done and was harmless. The court will not inquire what was done. If that should be improper it probably would be hidden and would not appear. In its inception the offer, however intended, necessarily invited and tended to induce improper solicitations, and it intensified the inducement by the contingency of the reward. *Marshall* v. *B. & O. R. R.*, 16 How. 314, 335, 336.

The general principle was laid down broadly in *Tool Co.* v. *Norris*, 2 Wall. 45, 54, that an agreement for compensation to procure a contract from the Government to furnish its supplies could not be enforced irrespective of the question whether improper means were contemplated or used for procuring it. *McMullen* v. *Hoffman*, 174 U. S. 639, 648. And· it was said that there is no real difference in principle between agreements to procure favors from legislative bodies, and agreements to procure favors in the shape of contracts from the heads of departments. 2 Wall. 55. In *Marshall* v. *Baltimore & Ohio R. R.*, 16 How. 314, 336, it was said that all contracts for a contingent compensation for obtaining legislation were void, citing, among other cases, *Clippinger* v. *Hepbaugh*, 5 W. & S. 315, and *Wood* v. *McCann*, 6 Dana (Ky.), 366. See also *Mills* v. *Mills*, 40 N. Y. 543. There are other objections which would have to be answered before the bill could be sustained, but that which we have stated goes to the root of the contract and is enough to · dispose of the case under the decisions heretofore made.

*Decree affirmed.*