### REYNOLDS v. GOODWIN-HILL CORPORATION.

#### No. 220.

Circuit Court of Appeals, Second Circuit.

April 3, 1946.

Thomas J. O'Sullivan, of New Haven, for appellant.

William S. Tyson, of Washington, D. C. (Bessie Margolin, of Washington, D. C., George H. Foley, of Boston, Mass., and Morton Liftin and Frederick U. Reel, both of Washington, D. C., of counsel), for appellee.

Before L. HAND, CLARK and FRANK, Circuit Judges.

Forrest S. Chilton, of New York City, for appellant.

Hyman Goldstein and Maurice M. Kreis, both of New York City, for appellee.

Before L. HAND, SWAN, and PHILLIPS, Circuit Judges.

L. HAND, Circuit Judge.

The defendant appeals from a judgment awarding the plaintiff a commission, earned as its broker or sales agent, for procuring a contract between it and the United States Army Engineering Corps. The only defence is that, since the commission was concededly contingent upon the plaintiff's success in procuring the contract, it was for that reason illegal within such decisions as Tool Co. v. Norris, 2 Wall. 45, 17 L.Ed. 868; Oscanyan v. Arms Co., 103 U.S. 261, 26 L.Ed. 539; and Hazelton v. Sheckels, 202 U.S. 71, 26 S.Ct. 567, 50 L. Ed. 939, 6 Ann.Cas. 217. The case was tried to a judge, who found that, in December, 1944, the defendant employed the plaintiff "in the capacity of sales director, and then and there agreed to pay him for his services a sum equivalent to five per cent of the gross amount of all contracts for the manufacture of products by the defendant, procured through the efforts of the plaintiff." He also found that thereafter the plaintiff "entered upon his duties as sales director of the defendant, and proceeded to Boston, Massachusetts and other parts of the country, and there endeavored to obtain contracts for the maufacture of products by the defendants." Finally he found that in the course of these services he procured a contract for the defendant with the Army Engineering Corps for the manufacture of 24,000 anchors, under which the defendant manufactured and delivered nearly 20,000 anchors. For this he awarded the plaintiff five per cent upon the gross amount received by the defendant.

The testimony as to the contract between the parties was contradictory. The defendant's witnesses swore that it had not employed the plaintiff as "sales director" at all, but only to secure this particular contract, promising to pay him five per cent if he could obtain a price of $14.50, but adding that, "if the price was as low as $13.50, "we would have to see how the job ran." They

testified that when he offered the defendant the price of $13.85, they told him that his commissions must be left indefinite. The plaintiff, on the other hand, testified that the defendant employed him generally as its "sales director"; that he signed the contract with the Army Engineering Corps as such; and that the price was left to him with an agreed commission of five per cent. In fact he did not procure any other contract for the defendant; though he testified that he attempted to do so. On such a conflict we must accept the finding that the defendant employed the plaintiff generally as its "sales director," and agreed to pay him five per cent upon all contracts which he might procure.

 On July 7, 1942, the War Department promulgated revised Regulations for the Procurement of Supplies (Chapter VIII, Title 10, Code of Federal Regulations), § 81.323 of which appears in the margin,[1] and was incorporated into the contract between the Engineering Corps and the defendant. Some time in 1945 the Judge Advocate General's Office issued a gloss upon this section which also appears in the margin.[2] Even though we assume for argument that the contract here in suit would be illegal under the decisions which we mentioned at the outset—a point we do not decide—this appeal turns upon whether the regulation just mentioned absolved it. We think that it did. In obtaining its supplies the War Department was free to impose upon bidders such conditions as it thought necessary in the national defence; and it need impose no more than it thought necessary. Even though the law made all contingent fees illegal, it might believe that production would be speeded, if some kinds of contingent fees were allowed, and it might so provide by its regulations. If it did so provide, not only would the contracts between itself and contractors be legal, but any taint would be removed from contracts between the contractors and their agents. This is plain, because by hypothesis the vice of the practice was in fostering deviation from their loyalty by officials of the Department; and if the Department was content to accept that risk, that necessarily presupposed that the risk might be actually imposed. Muschany v. United States, 324 U.S. 49, 65 S. Ct. 442. Thus, the case turns upon whether the plaintiff was the kind of agent whom § 81.323 allowed contractors to engage upon a contingent fee. The critical words are: "bona fide established commercial or selling agencies maintained by the contractor for the purpose of securing business." The word, "agencies," does indeed suggest a representative independent of the contractor himself, but any such limitation is forbidden by the suffix: "maintained by the contractor"; and the first alternative of the Judge Advocate General's gloss: "bona fide agent," is clearly right. The purpose of the section is reasonably plain: the payment of contingent fees was permitted when made to an agent employed generally to drum up business for the contractor, presumably because it was thought wise to allow contractors to do business in their accustomed way, in spite of the possibility that the inducement of a commission might on occasion result in abuses. But it was also thought that to employ persons to procure specific contracts upon a contingent fee, was likely to result in selecting those who had, or were supposed to have, some especial access to officials; and that this could not be tolerated.

 Were we to decide upon the cold record whether the plaintiff was in fact employed for more than this contract alone, and whether he was a "sales director" at

---

[1] "The contractor warrants that he has not employed any person to solicit or procure this contract upon any agreement for commissions, percentages or contingent fee. Breach of this warranty shall give the government, the right to annul the contract, or, in its discretion, to deduct from the contract price or consideration the amount of such commissions, percentage, brokerage or contingent fee. This warranty shall not apply to commissions payable by the contractor on contracts or sales secured or made through bona fide established commercial or selling agencies maintained by the contractor for the purpose of securing business."

[2] "Covenant Against Contingent Fees. Every contract, regardless of subject matter or amount, with exception of contracts of sale, must contain a covenant against contingent fees. This provision is directed against payment of fees for the use of influence, real or imaginary, in obtaining Government contracts. It does not prohibit payments by a contractor to (1) a bona fide agent or (2) bona fide selling agencies or commercial representatives engaged in the business of representing more than one contractor in dealings with other parties generally."

all, we might indeed have doubts; but since we cannot say that the finding in his favor was "clearly erroneous," we are foreclosed from that consideration. In view of what we have said, it is, therefore, not necessary for us to say whether he could have recovered, had the defendant's contract with the Engineering Corps not contained § 81.323.

Judgment affirmed.