**MITCHELL v. FLINTKOTE CO.**

No. 29, Docket 21699.

United States Court of Appeals
Second Circuit.

Argued Nov. 1, 1950.

Decided Jan. 4, 1951.

Sullivan & Cromwell, New York City (William Piel, Jr., and Henry N. Ess, III, New York City, of counsel), for appellant.

Austrian & Lance, New York City (Saul J. Lance and George H. Schwartz, New York City, of counsel), for appellee.

Before L. HAND, Chief Judge, and SWAN and FRANK, Circuit Judges.

SWAN, Circuit Judge.

This is an appeal by the defendant from a judgment for the plaintiff in an action upon an oral contract of employment under which the plaintiff claimed commissions on the sales price of camouflage paint sold by the defendant to the United States during World War II. Federal jurisdiction rests on diverse citizenship. The appeal questions the sufficiency of the evidence to support the jury's verdict that the contract was made and was fully performed on the plaintiff's part, and further asserts that the

court erred in declining to instruct the jury that the contract is illegal and void as contrary to public policy. If the latter contention is sound it will be unnecessary to consider the former. Therefore we shall first discuss the question of illegality on the assumption that the jury's verdict as to the making and performance of the contract can stand.

The Flintkote Company was a manufacturer of building supplies, including paint suitable for camouflage purposes. Meldon Mitchell was a camouflage "technician" who had had experience in military camouflage during the First World War and had friends among the Army officers charged with the preparation of camouflage defenses in the Second World War. He testified that on January 5, 1942 he orally agreed with Mr. Neher, a vice-president of Flintkote, upon a contract which the jury, under the court's charge, must have found to be in substance as follows: "That he was to be paid 3 per cent. on the sales of any camouflage material sold by the defendant to the United States Government" and in consideration of the defendant's promise to pay such commission "he agreed to devote so much of his time as he thought it deserved to the finding out of the Government's wants in the camouflage field and promoting the defendant's reputation, which, it appears, boiled down to having its name added to the list of possible contractors." After the making of the contract the defendant sold camouflage paint to the United States, all of its sales resulting from competitive bids submitted by it to the War and Navy Departments. The judgment represents 3% of all such sales, plus interest from September 30, 1944, the date of the plaintiff's demand for payment.

■ The defendant contends that the contract was illegal both under Executive Order No. 9001 which was in effect when the sales were made, and, aside from the Order, under Supreme Court decisions respecting contingency fee contracts for procuring government business. Title I of Executive Order No. 9001, 50 U.S.C.A.Appendix, § 611 note, authorized the War and Navy Departments and the Maritime Commission to enter into contracts and to exercise certain functions and powers without regard to the provisions of law relating to the making, performance, amendment or modification of contracts. For the protection of the interests of the United States Title II of Order No. 9001 set forth regulations for the exercise of the authority conferred by Title I. Section 5 of Title II requires that "Every contract entered into pursuant to this order shall contain a warranty by the contractor" that "he has not employed any person to solicit or secure this contract upon any agreement for a commission, percentage, brokerage, or contingent fee." The plaintiff's compensation was contingent on the defendant's making sales; if none was made, whatever services he performed would remain unrewarded. His employment contract was plainly contrary to the public policy expressed in section 5, if the section is applicable to the sales contracts subsequently made by the defendant with the War and Navy Departments.[1] The plaintiff argues that section 5 is not applicable to the defendant's sales contracts because they resulted from competitive bidding. Section 4 provides that competitive bidding "need not be required"; it merely gives permission to dispense with advertising and bids. But the Order covers contracts generally and no reason is apparent why section 5 of Title II should not have an equally broad coverage. Plainly the section would be applicable to any modification which might be made of a contract let on competitive bidding. It would seem strangely inconsistent to require the warranty for a minor modification but not for the initial contract.

The plaintiff also stresses the fact that there was no showing that the sales contracts obtained by the defendant contained the warranty specified in section 5. This, however, we regard as immaterial, as was said by Judge Leibell in Bradley v. American Radiator & Standard San. Corp., 6 F.

**1.** Statutes provide one source of public policy, United States v. Trans-Missouri Freight Ass'n, 166 U.S. 290, 340, 17 S. Ct. 540, 41 L.Ed. 1007, and Executive Orders have the force of statutes when made pursuant to Congressional authorization, Givens v. Zerbst, 255 U.S. 11, 18, 41 S. Ct. 227, 65 L.Ed. 475.

R.D. 37, 42, affirmed, 2 Cir., 159 F.2d 39. That case held that Order 9001 applied to a case where all the employment contract required the plaintiff to do was "to render such services as were necessary to enable the defendant to make a bid". 6 F.R.D. 37, 38.

█ But if the question be considered on the merits without regard to this decision as a precedent, we think the element of competitive bidding should not affect the applicability of Order No. 9001. An agent who is hired to ensure that his employer is given an opportunity to bid is just as much an instrument in "securing" the contract which results from an accepted bid as one who is hired to bring an employer's offer to fruition through personal solicitation. Where, as in the present case, the board which prepared specifications also reported the defendant's name to purchasing agencies as an available source of supply, it can hardly be said that the plaintiff, assuming that he performed under the contract, did not aid the company "to secure" the contract within the meaning of Order No. 9001. The proscription of contingent fee contracts was intended to protect government agencies against corrupting influences, and competitive bidding does not completely safeguard this purpose. The lowest bid is not always taken, since administrative officials have some discretion in passing on the quality of the goods tendered, as well as on the ability of the bidder to perform.[2] Hence bidding does not ensure that improper influence will not be brought to bear on the officials who have the responsibility of accepting or rejecting the bids.[3] As Mr. Justice Holmes pointed out in Hazelton v. Sheckells, 202 U. S. 71, 79, 26 S.Ct. 567, 50 L.Ed. 939, it is the tendency to corruption, not what was done in the particular case, which justifies the rule.

Executive Order No. 9001 is rigorous in its requirements. The Order flatly requires that no person be employed on contingent fee "to solicit or secure" the contract. No exception is made for cases in which nothing sinister was contemplated or done under the terms of the contingent fee contract. In this respect the Order closely approximates the rule as stated in the older Supreme Court cases.[4] Some of the later cases seem to approve a more lenient rule. Thus in Steele v. Drummond, 275 U. S. 199, at 205, 48 S.Ct. 53, at 54, 72 L.Ed. 238, it is said: "Detriment to the public interest will not be presumed, where nothing sinister or improper is done or contemplated. Valdes v. Larrinaga, 233 U.S. 705, 709, 34 S.Ct. 750, 58 L.Ed. 1163." Professor Williston thinks the more lenient view is generally accepted.[5]

Because we hold Order No. 9001 applicable to the case at bar, it is unnecessary to consider whether, if 9001 were inapplicable, Mitchell's contract with Flintkote would survive an illegality test under the less onerous conditions approved in Coyne v. Superior Incinerator Co., 2 Cir., 80 F.2d 844. The Coyne case involved an agreement for contingent compensation for sales of incinerators to various cities, and we upheld the agreement on the ground that it had not been shown that anything offensive to public policy had been either attempted or accomplished. Order No. 9001 had not been promulgated at the time Coyne was decided in 1936;[6] but even if it had been in effect it would not have set a standard for decision in that case, since the Order applies only to federal contracts

2. For example, one of the contracts involved in the case of Coyne v. Superior Incinerator Co., 2 Cir., 80 F.2d 844, resulted from a bid which was second highest out of six.

3. See, for example, Crocker v. United States, 240 U.S. 74, 36 S.Ct. 245, 60 L. Ed. 533; Glass v. Swimaster Corp., 74 N.D. 282, 21 N.W.2d 468.

4. Providence Tool Co. v. Norris, 2 Wall., 45, 17 L.Ed. 868; Trist v. Child, 21 Wall. 441, 22 L.Ed. 623; Meguire v. Corwine,

101 U.S. 108, 25 L.Ed. 899; Oscanyan v. Arms Co., 103 U.S. 261, 26 L.Ed. 539; Hazelton v. Sheckells, 202 U.S. 71, 26 S.Ct. 567, 50 L.Ed. 939. See also American Seating Co. v. Zell, 322 U.S. 709, 64 S.Ct. 1053, 88 L.Ed. 1057, reversing per curiam, 2 Cir., 138 F.2d 641.

5. Williston, Contracts, rev. ed., § 1729A; see also Comment in 17 U.Chi.L.Rev. 491.

6. First promulgated December 27, 1941, the Order continued in effect as amended by Executive Order No. 9296, January 30, 1943.

made by the Maritime Commission and the War and Navy Departments and the Coyne agreement involved contingent payment for sales to non-federal government agencies.

The Flintkote agreement with Mitchell was made in New York City, and in his brief plaintiff cites two New York cases [7] which indicate that the New York courts would hold Order No. 9001 not decisive of the issues in this case. But this does not alter our conclusion. Order No. 9001 states a federal rule of public policy and federal, not state, law governs its applicability. The "checker-board" pattern imposed by Erie R. Co. v. Tompkins [8] is necessarily unsuited to matters subject to federal · regulation, and hence state law does not control the disposition of suits which, although they are between non-governmental parties and are brought in a federal court on the basis of diversity of citizenship, involve interpretation or application of federal law.[9] If, as must be conceded, the national government has power to protect itself against contracts of the kind here in question, the protection afforded must be uniform in all its ramifications, including a uniform rule governing the enforceability of contingent fee contracts between principal and agent.

Judgement reversed and complaint dismissed.

---

7. Leahy v. Brooklyn Waterfront Terminal Corp., 272 App.Div. 781, 69 N.Y.S.2d 596; Singer v. Bruner-Ritter, Inc., 180 Misc. 928, 42 N.Y.S.2d 881, affirmed 266 App. Div. 953, 44 N.Y.S.2d 589, appeal denied 266 App.Div. 993, 45 N.Y.S.2d 411.

8. 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

9. See Sola Electric Co. v. Jefferson Electric Co., 317 U.S. 173, 176, 177, 63 S.Ct. 172, 87 L.Ed. 165; Ricketts v. Pennsylvania R. Co., 2 Cir., 153 F.2d 757, 759, 164 A.L.R. 387; Moore, Commentary on the Judicial Code, Par. 0.03(45) (6).