FEDERAL PACIFIC ELECTRIC COMPANY, Plaintiff, *v.* WILLIAM McADAMS et al., Individually and as Copartners Doing Business under the Name of FOUR STAR PUBLIC RELATIONS ASSOCIATES, Defendants.

City Court of the City of New York, Special Term, New York County, March 22, 1955.

*Eugene L. Bondy* and *Bertram Branfman* for plaintiff.

*Jeremiah F. Cross* for defendants.

BAER, J. This is a motion to dismiss the defendants' affirmative defense on the ground that it is insufficient in law; and secondly, to dismiss the counterclaim on the ground of (a) insuffi-

ciency; (b) that it was not interposed by the real party in interest; (c) that the court has no jurisdiction over the subject matter.

I shall first consider that part of the motion directed to the counterclaim. If the third contention, to wit: "that the court has no jurisdiction over the subject matter" is sound, it will be unnecessary to consider the other two. The substance of this contention is that the counterclaim is illegal and void as contrary to public policy. More specifically, that it violates Executive Order 9001, promulgated under the United States Code (tit. 50, Appendix, § 611), and therefore is a claim upon which relief may not be granted.

Executive Order 9001 (Code of Fed. Reg., Cum. Supp., tit. 3, pp. 1054–1056), requires, as far as we are concerned here, that "Every contract * * * shall contain a warranty by the contractor" that "he has not employed any person to solicit or secure this contract upon any agreement for a commission, percentage, brokerage or contingent fee." The order makes an exception for commissions payable or contracts "secured or made through bona fide established commercial or selling agencies maintained by the contractor for the purpose of securing business."

The counterclaim on its face clearly indicates that under the alleged agreement the defendants undertook to assist the plaintiff in obtaining government contracts and that on "all contracts actually awarded to the plaintiff * * * in the sums of $100,000 or more per unit, the plaintiff was to pay to the defendants for their services a commission of 4% of such gross amounts."

This is clearly that type of contract which has been held to be against public policy and unenforcible (*Mitchell* v. *Flintkote Co.*, 185 F. 2d 1008, certiorari denied 341 U. S. 931; *Bradley* v. *American Radiator & Std. Sanitary Corp.*, 159 F. 2d 39). Judge SWAN in the *Mitchell* case (*supra*), in holding a similar contract unenforcible, said on page 1010: "The proscription of contingent fee contracts was intended to protect government agencies against corrupting influences". And again, on the same page, "Executive Order 9001 is rigorous in its requirements. The Order flatly requires that no person be employed on contingent fee 'to solicit or secure' the contract."

The reasoning behind these cases is that it is the tendency to corrupt, not what is done in a particular case, which justifies the rule. (*Tool Co.* v. *Norris*, 2 Wall 45; *Hazelton* v. *Sheckells*, 202 U. S. 71.)

Although the order provides for an exception in contracts "secured or made through bona fide established commercial or selling agencies maintained by the contractor for the purpose of securing business", it has been held that one desiring to avail himself of the exception must show on the face of his complaint that he falls within the privileged class (*Bradley* v. *American Radiator & Std. Sanitary Corp., supra*). It must appear that the party was one who was generally employed to drum up business for the contractor, not an agent employed to secure a specific contract. There must have been a continuing relationship between the contractor and his agent (*Bradley* v. *American Radiator & Std. Sanitary Corp., supra*; *Reynolds* v. *Goodwin-Hill Corp.,* 154 F. 2d 553; *United States* v. *Paddock,* 178 F. 2d 394, certiorari denied 340 U. S. 813).

Clearly there is nothing in the defendant's counterclaim to indicate that he has met this test.

I am not unmindful of a number of New York cases which do not interpret the Executive Order, as have the Federal courts. (*Bradford* v. *Durkee Mar. Prods. Corp.,* 180 Misc. 1049; *Singer* v. *Bruner-Ritter, Inc.,* 180 Misc. 928, affd. 266 App. Div. 953, motion for leave to appeal to the Court of Appeals denied, 266 App. Div. 993; *Leahy* v. *Brooklyn Waterfront Term. Corp.,* 272 App. Div. 781.) These cases have been decided on the ground that where there is no showing that illegal means or corrupt practices have been employed to secure the type of contract involved here, the contract will not be regarded as contrary to public policy. They further hold that a violation of the Executive Order may create rights in the Government against the contractor, but does not render the contract void as far as agents who operate under the contract are concerned.

Notwithstanding the afore-mentioned New York cases, I am constrained to decide this part of the plaintiff's motion in accordance with the Federal court decisions cited above. Executive Order No. 9001 states a Federal rule of public policy and Federal law should govern. Federal law should control where the interpretation or application of Federal law is involved. (*United States* v. *County of Allegheny,* 322 U. S. 174; *Ruggiero* v. *Liberty Mut. Ins. Co.,* 272 App. Div. 1027, affd. 298 N. Y. 775; *Hazelton* v. *Sheckells, supra*). This proposition was well stated by Judge SWAN in *Mitchell* v. *Flintkote Co. (supra,* p. 1011). "If, as must be conceded, the national government has power to protect itself against contracts of the kind here in question, the protection afforded must be uniform in all its ramifications, including a uniform rule governing the enforceability of con-

tingent fee contracts between principal and agent." (See *O'Connor* v. *Hudson Riv. Day Line*, 269 App. Div. 960, affd. but on other grounds 296 N. Y. 501, where the Appellate Division, Second Department, followed the Federal court decisions in contrast to the New York cases cited above.)

The logic of the Federal interpretation of the Executive Order, although it be a stricter one than that employed by the New York cases cited, becomes all the more persuasive, when we consider the notorious evils involved in this type of contract. Surely, we cannot be oblivious to the Federal Government's right to obviate these evil practices. On the contrary, we should lend our support.

It is important to note that the New York cases all antedated the Federal cases upon which I rely. While it may have been well to interpret the Executive Order in the light of State public policy before any pronouncements were made by the Federal courts, it seems only proper and correct that we be guided by Federal decisions interpreting a specific Executive Order, once they have been made.

For the foregoing reasons, plaintiff's motion to dismiss the defendants' counterclaim is granted.

While a motion addressed to the pleadings permits a search of the record for determination of the sufficiency of other pleadings (*Mattingly* v. *News Syndicate Co.*, 192 Misc. 610), and therefore the sufficiency of the complaint may be considered, I do not feel that the third cause of action should be dismissed. There are facts alleged which, if proved, may save this cause of action from the restrictions of the parol evidence rule. Similarly, the affirmative defense, even though attacked for the same defects as were grounds for dismissal of the counterclaim, should not be dismissed as it is explanatory of the defense of "no consideration."

Order entered.