EGLIN MANOR, INC., a Florida Corporation

v.

UNITED STATES.

No. Cong. 3–57.

United States Court of Claims.

June 8, 1960.

Patrick G. Emmanuel, Pensacola, Fla., for plaintiff.

Clare E. Walker, New York City, with whom was George Cochran Doub, Asst. Atty. Gen., for defendant.

LARAMORE, Judge.

On July 1, 1957, this court received from the House of Representatives H.R. 3320, House Report No. 529, and House Resolution 260, 85th Congress, 1st Session. The body of said Resolution reads as follows:

"*Resolved,* That the bill (H.R. 3320) entitled 'A bill for the relief of Eglin Manor, Incorporated', together with all accompanying papers, is hereby referred to the Court of Claims pursuant to sections 1492 and 2509 of title 28, United States Code; and said court shall proceed expeditiously with the same in accordance with provisions of said sections and report to the House of Representatives at the earliest practicable date, giving such findings of fact, including an analysis of the amounts included as the basis for the sum stated in the bill, and conclusions thereon as shall be sufficient to inform the Congress of the nature and character of the demand, as a claim legal and equitable, against the United States."

Plaintiff filed his petition in this court pursuant to said House Resolution and sues for the recovery of $44,959.74 allegedly expended as the sponsor of a Wherry housing project contemplated to be built at Eglin Air Force Base by a Florida corporation known as Warrington Home Builders, Inc.

Plaintiff's claim rests on the allegation that it, as named sponsor of the project, in a "Certification of Need for Military Housing" issued by the Air Force to the Federal Housing Administration in accordance with the provisions of section 803(b) (2) of Title VIII of the National Housing Act, 12 U.S.C.A. § 1748b(b) (2), and a "Letter of Acceptability" issued by the Air Force, expended certain sums of money in connection with a proposal to construct, maintain and operate 500 privately financed housing quarters, which certification of need and letter of acceptability were cancelled by the Secretary of the Air Force.

The facts of the case show that plaintiff is a Florida corporation whose controlling stockholder is also the sole owner and president of another Florida corporation, Warrington Home Builders, Inc.

Plaintiff corporation was organized and incorporated in 1955, for the prime purpose of sponsoring a Wherry housing project contemplated to be built at Eglin Air Force Base by Warrington Home Builders, Inc. Mr. Dean, the controlling stockholder of plaintiff corporation and the sole owner and president of Warrington Home Builders, Inc., arranged for Warrington to make any and all disbursements of moneys to be required by plaintiff in connection with the Wherry project, with the understanding that plaintiff would subsequently reimburse Warrington for all moneys so advanced.

Since the construction of two previous developments by Warrington at Eglin Air Force Base in 1950 or 1951, there was local speculation that more of such housing was needed and probably would be built at Eglin.

On January 10, 1955, Johnnie J. Wright, a former State Senator of the State of Florida, was engaged by Mr. Dean on the Warrington payroll as a public relations man at $400 per month and expenses. Mr. Wright knew persons of influence all over the United States and his primary duty in connection with this employment was to obtain a certification of need and letter of acceptability

from the Air Force, naming plaintiff as sponsor for the rumored project at Eglin. In addition to his salary and expenses Mr. Dean told Wright that he would receive stock in plaintiff company if he was successful in obtaining the certification of need and letter of acceptability.

Mr. Wright made several trips to Washington, D. C., and Texas in order to contact people and enlist their aid in securing the commitment from the Air Force. In that connection, in January 1955, he contacted his half-sister, Mrs. Don G. McElvey, former Chairman of the Eisenhower Ladies Club of Lamar County, Texas, Democrats for Eisenhower, and asked her to introduce him to Mr. Porter of Houston, the Chairman of the Republican Committee for the State of Texas. Wright informed Mrs. McElvey that he sought her aid in order to obtain a recommendation by the Republican Party of the State of Texas that plaintiff be awarded the subject Title VIII project. Following this request Mrs. McElvey made an appointment to see Mr. Porter, and also arranged for a conference between Mr. Wright and Mr. Porter.

In the presence of Mrs. McElvey, Mr. Porter placed a telephone call to a Mr. Talbott. Mr. Porter asked Mr. Talbott several different questions concerning the Eglin project, including whether it was coming up or was in the making, and told him that he would like to recommend the Warrington interests for the job.

On April 11, 1955, following a telephone conversation with Leon Julius, Deputy, Family Housing Division, Headquarters, United States Air Force, Washington, D. C., Mr. Dean sent a telegram and wrote a letter to the Air Force in Washington expressing a desire to build, maintain and manage the 500 additional housing units to be built at Eglin Air Force Base.[1] He advised that plaintiff was in a position to start immediately on the plans, and was awaiting a reply from the Air Force.

About the middle and also the latter part of April 1955, Mrs. McElvey met Mr. Dean and they agreed on those occasions that Mr. Dean would reimburse both Mrs. McElvey and the Republican National Committee in Houston, Texas, for their expenses and that he would make a contribution to the Republican National Committee in Houston. Mrs. McElvey expressed the feeling that plaintiff would get the Certificate of Need and Letter of Acceptability because of her activities in plaintiff's behalf at the Houston Office of the Republican National Committee.

Negotiations between plaintiff and the Air Force continued and, on April 28, 1955, the Secretary of the Air Force issued a "Certification of Need for Military Housing" to the Federal Housing Administration in accordance with the provisions of Section 803(b) (2) of Title VIII of the National Housing Act (12 U.S.C.A. § 1748b(b) (2)), which certification was made in connection with and was to accompany plaintiff's application for mortgage insurance to be filed with the Federal Housing Administration by the plaintiff in order to finance the construction of the housing project in question. This certificate named plaintiff as the sponsor of the project.

In addition, Air Force Headquarters in Washington, D. C., advised the plaintiff that a Certificate of Need had been issued, and also mailed to the plaintiff on April 28, 1955, a Letter of Acceptability which accepted plaintiff's proposal for construction by Warrington and the maintenance and operation by plaintiff of the project. The Letter of Acceptability provided in pertinent part:

"* * * Subject to the conditions hereinafter set forth, your proposal dated April 11, 1955, to construct, maintain, and operate 500 privately financed housing quarters

---

1. Under Title VIII the builder of a Wherry housing project was prohibited from receiving a certification as sponsor. Thus, it was contemplated here that Warrington would build the project, but that plaintiff would manage and maintain it, i.e., "sponsor" it.

under title VIII of the National Housing Act, as amended, on the base at Eglin Air Force Base, Fla., is acceptable to the Department of the Air Force, and accordingly there is attached hereto the certification required by section 803(b) (2) of that act, executed by the Secretary of the Air Force as designee of the Secretary of Defense.

"The acceptability of your proposal and the certification referred to are subject to the following terms and conditions:

"(a) That you execute with the Department of the Air Force a lease or leases acceptable to us of land on which the housing project is to be constructed, which lease or leases will provide the basis for a project covered by a mortgage insured by the Federal Housing Administration.

"(b) That the certification referred to listing your firm as sponsor will be filed by you or on your behalf formally within 30 days of the certification date with the appropriate insuring office of the Federal Housing Administration in accordance with section II of Administrative Rules and Regulations for Military Housing Insurance under title VIII of the National Housing Act, as amended, issued August 22, 1949.

"(c) That closure with the Federal Housing Administration shall have been consummated within 90 days of the date of the certification referred to above.

\* \* \* \* \* \*

"(i) That the plans and specifications for the project shall be similar to those prepared by Joseph H. Bryson, architect, Jacksonville, Fla., for the existing 750 units, except for changes required by the Federal Housing Administration and Headquarters, United States Air Force. Preliminary and final plans and specifications shall be subject to Air Force approval prior to formal closing of the project with the Federal Housing Administration and should be submitted to Headquarters, United States Air Force, Family Housing Division, at the earliest practicable date.

"(j) That the sponsor will take up this letter with the local Federal Housing Administration for their consideration prior to or at the time of applying for mortgage insurance.

\* \* \* \* \* \*

"(q) That Warrington Home Builders, Inc., will act as construction or general contractors for the entire project and the selection of any other contractor will justify cancellation of the certificate. However, if a change in contractors is necessary, such change must be approved by Headquarters, United States Air Force.

"(r) That at or before the time of closure with FHA, the president of the corporation signatory to the lease referred to in paragraph (a) above, will execute an affidavit to the effect that (i) no person or selling agency has been employed or retained to solicit or secure such business, or that (ii) any such person or selling agency so employed is a bona fide employee or bona fide commercial or selling agency maintained by said corporation for the purpose of securing business.

\* \* \* \* \* \*

"(u) That in the event the sponsor is not able to meet the schedule of rents, Federal Housing Administration costs, regulations, and specifications within the limits of its proposal within 90 days of the date of the certificate, or any of the other conditions of this letter, this indication of inability to perform will justify cancellation of the certificate."

On May 3, 1955, Mr. Joseph H. Bryson, independent architect-engineer hired by plaintiff to prepare plans for the housing project, hand-carried preliminary plans to Air Force Headquarters in Washington, D. C. On May 4, 1955,

plaintiff was authorized by defendant to proceed with final working drawings of the house plans. On May 9, 1955, preliminary site plans for the project, also prepared by Mr. Bryson, were hand-carried by him to Air Force Headquarters, and on May 11, 1955, these plans were approved by defendant, subject to agreed changes and final approval by the Federal Housing Administration.

Although Mrs. McElvey never presented Mr. Dean with a statement concerning expenses incurred by her on account of plaintiff, she received a check in the amount of $1,100 from Warrington about two weeks after plaintiff received the documents described above. No moneys had been paid to her by the Warrington interests prior to that time.

On or about May 18, 1955, other contractors met to protest the negotiated award to plaintiff and demanded the right to bid on the project.

Mr. Harold Talbott, then Secretary of the Air Force, after consulting with interested representatives of the Florida congressional delegation, canceled the Certificate of Need and Letter of Acceptability on June 1, 1955, and so advised the plaintiff and the Housing and Home Finance Agency. The reason for the cancellation is not shown in the record but the Air Force advised by letter dated July 11, 1956, that the cancellation of this arrangement, which would normally lead to the consummation of a housing contract between the interested parties, "was not brought about by any default, delay, or failure to perform on the part of Eglin Manor, Inc." Thereafter, the Air Force constructed on the site planned for this project housing of a different type than Wherry housing.

On June 3 and 4, 1955, plaintiff advised the Department of the Air Force that it declined to accept cancellation of the Certificate of Need and Letter of Acceptability or surrender same to the department, and requested a meeting with representatives of the Federal Housing Administration, Air Force, and "all political opposition and other opposition". This request was denied by the Air Force on June 7, 1955.

Thereafter, plaintiff requested that the Department of the Air Force reimburse it for the moneys spent by it in connection with the project in the amount of $44,863.43. This request was later denied by the Department of the Air Force.

On July 15, 1955, Mr. Wright's employment by the Warrington interests terminated.

On October 20, 1955, the Federal Housing Administration determined that the plaintiff's application for Federal Housing insurance did not qualify because "Construction prevented due to causes beyond the control of the mortgagor", and the fee of $6,075 paid for the Federal Housing Administration commitment was refunded to the plaintiff by the Federal Housing Administration.

Warrington Home Builders paid expenses incurred by plaintiff in connection with the canceled project as follows:

Joseph H. Bryson, Architect ............................$27,500.00
Frank G. Glenn, Surveyor & Topography Engineer ........ 1,799.60
Edwin Clarke, Attorney, FHA project work .............. 909.94
Holsberry, Holsberry & Emmanuel, Attorney ............. 185.77
Earl H. Smith, Salary ................................. 1,875.00
Earl H. Smith, Travel Expenses ........................ 215.84
J. J. Wright, Salary .................................. 2,466.67
J. J. Wright, Travel & Other Expenses ................. 2,355.33
J. J. Wright & W. K. Dean, Expenses ................... 500.00
W. K. Dean, Travel Expenses ........................... 150.00

Total ......................................... 37,958.15

The plaintiff has not reimbursed Warrington for these advances. Of the $37,958.15, $3,613.67 was expended through April 11, 1955, leaving a balance of $34,344.48 expended subsequent to that date. A total of $6,549.97 was expended through April 28, 1955, when the Certificate of Need was issued and the Letter of Acceptability was mailed. The balance, $31,408.18, was expended after that date.

The first question to be determined under the reference is whether there is a legal liability on the part of the United States to reimburse plaintiff for the moneys expended.

At the outset, it is clear that no written contract existed between plaintiff and defendant, nor is it so contended by plaintiff. The only authority of the Secretary of the Air Force was to lease Government property under certain conditions.

█ Indeed it is not necessary for this court to decide whether there was a contract express or implied for this reason—prior to the sending of the letter of acceptability, plaintiff by its own conduct and action had destroyed its ability to qualify as a sponsor of the proposed project.

A condition of the letter of acceptability is this:

"(r) That at or before the time of closure with FHA, the president of the corporation signatory to the lease referred to in paragraph (a) above, will execute an affidavit to the effect that (i) no person or selling agency has been employed or retained to solicit or secure such business, or that (ii) any such person or selling agency so employed is a bona fide employee or bona fide commercial or selling agency maintained by said corporation for the purpose of securing business."

The substance of this condition is and was required by statute to be inserted in any negotiated contract. 62 Stat. 23, 41 U.S.C.A. §§ 153,* 254.

The facts in this case clearly show that Johnnie J. Wright was hired by Mr. Dean on January 10, 1955, and further that his primary duty in connection with his employment was to obtain a certification of need and letter of acceptability from the Air Force, naming plaintiff as sponsor for the Eglin project. It is also clear that Wright was hired because he was acquainted with persons of influence and that on at least one occasion he used his influence to induce a Mrs. McElvey to aid in getting the award. The facts further show that Mrs. McElvey was paid $1,100 by Warrington Home Builders, Inc. The evidence further shows that Mr. Wright's employment by the Warrington interests terminated on July 15, 1955.

Clearly, condition (r) above referred to was violated. The plaintiff hired Wright to use his influence to secure the certification of need and letter of acceptability. Mr. Wright secured the aid of Mrs. McElvey and she was paid by Warrington.

Furthermore, the facts clearly show that Wright was promised stock in the plaintiff company if he was successful in obtaining the certification of need and letter of acceptability. This, in our opinion, constituted a contingent fee which is in violation of statute 41 U.S. C.A. §§ 153, 254.

Under these circumstances, no one in good conscience could or did execute an affidavit as required that no person had been employed or retained to solicit or secure such business or that any such person so employed was a *bona fide* employee maintained by said corporation for the purpose of securing business. Nor could anyone swear that Wright was not entitled, if successful, to a contingent fee in violation of the above cited statute, nor was such an affidavit made.

* Now 10 U.S.C.A. §§ 2306, 2313.

" * * * The proscription of contingent fee contracts was intended to protect government agencies against corrupting influences * * *. As Mr. Justice Holmes pointed out in Hazelton v. Sheckells, 202 U.S. 71, 79, 26 S.Ct. 567, 50 L.Ed. 939, it is the tendency to corruption, not what was done in the particular case, which justifies the rule." Mitchell v. Flintkote Co., 2 Cir., 185 F.2d 1008, 1010.

Thus it can be seen that even if it be assumed that the letter of acceptability sent by defendant to plaintiff on April 28, 1955, was the acceptance of an offer which ripened into a contract, such contract was illegal under the statute cited, supra, and consequently plaintiff does not have a legal claim against the United States.

Nor is there an equitable or moral claim against the United States, for here plaintiff does not come into court with clean hands. Plaintiff attempted to use improper influence in its effort to obtain sponsorship which was an indispensable condition under the letter of acceptability. To reimburse plaintiff under these circumstances would be tantamount to underwriting the use of improper influence. Since we do not believe improper influence could ripen into a Government contract, we hold that plaintiff has no claim either equitable or legal against the United States.

This opinion, together with the findings of fact which follow, will be certified to the Congress pursuant to House Resolution 260, 85th Congress, 1st Session.

It is so ordered.

JONES, Chief Judge, and DURFEE, MADDEN, and WHITAKER, Judges, concur.