LE JOHN MANUFACTURING COMPANY, Appellant,

v.

Dwight WEBB, Jr., Appellee.

No. 12321.

United States Court of Appeals District of Columbia Circuit.

Argued Jan. 24, 1955.

Decided April 28, 1955.

---

Mr. Lawrence J. Simmons, Washington, D. C., with whom Mr. Thomas B. Scott, Washington, D. C., was on the brief, for appellant.

Mr. Bolling R. Powell, Jr., Washington, D. C., for appellee.

Before WILBUR K. MILLER, WASHINGTON and DANAHER, Circuit Judges.

WASHINGTON, Circuit Judge.

This case raises once more the question of the validity of contingent fee contracts based on sales to the Federal Government. The District Court found that the plaintiff Webb (appellee here) was to receive a commission of five per cent on all consummated sales of defendant company's products to the United States. It gave judgment in plaintiff's favor for the amount of the commission, and the defendant appeals.

The arrangement between Webb and the company was an oral one. The product chiefly involved was electric fans, and the main sales made were to the armed services. Plaintiff was to receive a commission only on such sales as actually were consummated, being paid nothing for his efforts or expenses unless successful. He was not committed to any specified or regular duties in connection with procurement, and was not obligated to devote any particular amount of time to the defendant's business. His agency extended only to sales to the Government. The defendant's non-government sales in the District of Columbia were handled by another agency.

"Contingent fee contracts to secure Government business for the employer of the recipient [of the fee] have been held invalid because of their tendency to induce improper solicitation of public officers and the exercise of political pressure." Muschany v. United States, 1945, 324 U.S. 49, 64, 65 S.Ct. 442, 450, 89 L. Ed. 744. This traditional policy of the courts was reinforced by Executive Order No. 9001, 6 Fed.Reg. 6787, 50 U.S. C.A.Appendix, § 611 note, issued pursuant to the First War Powers Act, 50 U.S.C.A.Appendix, § 601 et seq., and by Section 4(a) of the Armed Services Procurement Act, 41 U.S.C.A. § 153(a). At the time the arrangement in this case was made, the Executive Order required Government procurement contracts to contain the following warranty:

"The contractor warrants that he has not employed any person to solicit or secure this contract upon any agreement for a commission, per-centage, brokerage, or contingent fee. Breach of this warranty shall give the Government the right to annul the contract, or, in its discretion, to deduct from the contract price or consideration the amount of such commission, percentage, brokerage, or contingent fees. This warranty shall not apply to commissions payable by contractors upon contracts or sales secured or made through bona fide established commercial or selling agencies maintained by the contractor for the purpose of securing business."

■ The purpose of this requirement of the Executive Order is plain: it reflects the public policy long enunciated by the courts, and adds to it a thrust comparable to that of statutory law. See Mitchell v. Flintkote Co., 2 Cir., 1951, 185 F.2d 1008. A compensation contract in violation of the required warranty will not be enforced by the courts.

■ Plaintiff argues that he is a "bona fide established commercial or selling [agency] maintained by the contractor for the purpose of securing business," and is thus entitled to the benefit of the exception contained in the last sentence of the quoted warranty. Speaking of that sentence, the Second Circuit has said:

"The exception creates a privileged class who may receive contingent fees for securing government contracts, while others may not. Not only should grants of special privileges be jealously restricted, but such a restriction is also in the interest of maintaining the integrity of governmental contracting procedure." Bradley v. American R. & S. S. Corp., 2 Cir., 1947, 159 F.2d 39, 40, 41, affirming, D.C.S.D.N.Y., 1946, 6 F.R.D. 37.

Adopting a similar approach, the Fifth Circuit has held that the exception does not protect one "who merely receives a contribution to the support of its agency in the form of a contingent fee." United States v. Paddock, 5 Cir., 178 F.2d 394,

395, rehearing denied, 1950, 180 F.2d 121, certiorari denied, 1950, 340 U.S. 813, 71 S.Ct. 41, 95 L.Ed. 597. The court added—

"The primary decision on this item turns upon the meaning of the word maintained; for present purposes, it is the key word in the exception. If the word is given its usual and ordinary acceptation, and interpreted in the spirit of the order, the exceptive class of procurement agencies is limited to those maintained by the contractor in good faith for the purpose of securing business. To maintain here (according to the dictionary) means to keep in a particular state or condition; to sustain; to keep possession of; to hold and defend; not to surrender or relinquish; to bear the expense of; to support; to keep up; to supply with what is needed. Consequently, a procurement agency, employed merely on contingent fees to secure war contracts, did not meet the test prescribed by the exceptive clause * * *." 178 F.2d at page 395.

■ In our view, a restrictive approach of this sort is necessary in order to prevent the excepting clause from utterly defeating the purpose and effect of the warranty itself. Plaintiff here, to take advantage of the exception, must show that his business was bona fide, that it was established, that it was a commercial or selling agency, and that it was maintained by the contractor for the purpose of securing business. See Paddock, supra, 178 F.2d at page 395. We doubt that plaintiff has shown any of these things;[1] certainly he has not shown that his business was "maintained" by the contractor. See Bradley, supra, 159 F.2d at page 41. We conclude that the contingent fee contract in this case violates the public policy declared by the Executive Order, and cannot be enforced.[2]

■ The District Court in upholding the contingent fee agreement relied in part on a finding of fact that "the efforts of the plaintiff on behalf of the defendant did not involve the use of any political or special influence, or any corrupt or sinister practices contrary to the public interest." Appellant challenges this finding as clearly erroneous. But in any event it is clear that actual evidence of improper conduct is not necessary to render such agreements unenforceable: "The law looks to the general tendency of such agreements; and it closes the door to temptation, by refusing them recognition in any of the courts of the country." Tool Co. v. Norris, 1864, 2 Wall. 45, 56, 69 U.S. 45, 56.[3]

1. Plaintiff's own testimony shows that he left the Navy in 1946; that he and others formed in that year a company called Manufacturers' Agents Incorporated; that his agreement with defendant was made in 1949; and that during the year which followed the agreement he was a salaried employee of a firm in Pennsylvania, spending but little time in Washington. The present dispute arose in 1950.

2. In Reynolds v. Goodwin-Hill Corp., 2 Cir., 1946, 154 F.2d 553, 555, plaintiff had been employed as defendant's "sales director" and was promised five per cent on all contracts procured. The only contract actually procured was one with the Government. The court held that recovery was proper, saying that the exception in the Executive Order applied to an agent "employed generally to drum up business for the contractor," but not to an agent employed to procure a specific contract. The opinion itself and the later decisions of the same court in Bradley and Mitchell show that this distinction, assuming it to be valid, does not aid persons situated as is the plaintiff in the case at bar. For plaintiff here was employed solely to "drum up" government business. See also American Seating Co. v. Zell, 1944, 322 U.S. 709, 64 S.Ct. 1053, 88 L.Ed. 1057, reversing 2 Cir., 1943, 138 F.2d 641.

3. See also McNeill v. Nevius, 1950, 88 U. S.App.D.C. 49, 187 F.2d 81; Noonan v. Gilbert, 1934, 63 App.D.C. 30, 68 F.2d 775. In Hazelton v. Sheckells, 1906, 202 U.S. 71, 79, 26 S.Ct. 567, 568, 50 L.Ed. 939, Mr. Justice Holmes disposed of a similar argument by saying: "The court will not inquire what was done."

**52**

The District Court also took the position that "it certainly does not stand in the defendant's mouth to allege or claim illegality of a contract which it entered into openly and of which it has received the benefit." On the contrary, as we said in Brown v. Gesellschaft Fur Drahtlose Telegraphie, M.B. H., 1939, 70 App.D.C. 94, 96, 104 F.2d 227, 229:

> "The policy of the law which prohibits contingent fees for services rendered in securing 'favor legislation', is not concerned with the moral or ethical standards of clients served. The purpose of the law is to prevent improper pressures upon legislative action. The fact that a client may be one of such low moral and ethical standards as to take advantage of his agent, certainly constitutes no reason for permitting his agent to take advantage of the government."

Nor can appellee recover on a *quantum meruit* basis in disregard of the illegal contract. In an earlier appeal in the case just mentioned, 1935, 64 App.D.C. 357, 362, 78 F.2d 410, 415, the court also refused any recovery on that ground, stating that:

> "the determination of the compensation, if any, defendant is entitled to, depends upon the services rendered, and this at once leads to the terms and conditions of the contract which, if void, prohibits the recovery of any compensation under it."

This holding was expressly reaffirmed on the second appeal. See also Silverman v. Osborne Register Co., 1946, 81 U. S.App.D.C. 163, 155 F.2d 879; cf. Oscanyan v. Arms Co., 1880, 103 U.S. 261, 275–277, 26 L.Ed. 539.

For these reasons, the judgment of the District Court must be

Reversed.