**VOGT BROTHERS MANUFACTURING COMPANY, Appellant,**

v.

**C. B. STANSBURY, Appellee.**

Court of Appeals of Kentucky.

May 3, 1957.

Rehearing Denied Sept. 20, 1957.

R. P. Hobson, John P. Sandidge, Woodward, Hobson & Fulton, Louisville, for appellant.

James B. Young and James P. Hancock, Louisville, for appellee.

CULLEN, Commissioner.

C. B. Stansbury brought action against Vogt Brothers Manufacturing Company to recover upon quantum meruit a reasonable amount of compensation for services alleged to have been performed by him in assisting Vogt Brothers to obtain a contract with the

United States Air Force for the manufacture of bomb racks. The action was based upon an alleged oral agreement under which Stansbury was to represent Vogt Brothers at Wright-Patterson Air Force Base, in Dayton, Ohio, and which provided that if he was successful in obtaining a contract for them, a "satisfactory settlement" of compensation would be negotiated. Vogt Brothers were awarded a contract to manufacture bomb racks, in the ultimate gross amount of $543,386, but they refused to pay Stansbury a commission, on the grounds that their agreement with him did not cover "prime" contracts, and that he had not rendered any services in securing the bomb rack contract. The jury returned a verdict for Stansbury in the amount of $9,000 (less than two percent of the amount of the contract). Vogt Brothers have appealed from the judgment entered upon the verdict.

The primary contention of Vogt Brothers, on this appeal, is that the agreement under which Stansbury was to be paid a commission contingent upon the procurement of a prime contract with the Air Force was contrary to public policy, and therefore illegal. It is exceedingly doubtful whether they are entitled to raise this question on appeal, because they did not plead the defense of illegality in their answer, as required by CR 8.03, nor did they assert illegality as a ground of their motions for a directed verdict, as required by CR 50.01. However, we have considered the question, and as will be developed, we find the contention to be without merit.

■■ In asserting illegality of the contract, Vogt Brothers first rely upon some early decisions of the Supreme Court of the United States, such as in Providence Tool Co. v. Norris, 2 Wall. 45, 56, 69 U.S. 45, 56, 17 L.Ed. 868, holding that an agreement for compensation to procure a contract from the government for furnishing supplies is contrary to public policy, as a matter of common law. However, since 1941 the public policy with respect to such procurement contracts has been declared by Congressional Acts and Executive Orders, with the result that the question of public policy is no longer governed by common law considerations. See Batesville Casket Co. v. Fields, 288 Ky. 104, 155 S.W.2d 743; Bankers Bond Co. v. Buckingham, 265 Ky. 712, 97 S.W.2d 596.

A vigorous argument is made that the contract violates a 1948 Act of Congress, 41 U.S.C.A. § 153(a), and a 1951 Executive Order of the President, No. 10210, 50 U.S.A.Appendix, § 611 note. The Act and the Order both provide that a person entering into a prime contract with an agency of the Department of Defense must warrant that "no person or selling agency has been employed or retained to solicit or secure such contract upon an agreement or understanding for a commission, percentage, brokerage or contingent fee, *excepting bona fide employes or bona fide established commercial or selling agencies maintained by the Contractor for the purpose of securing business.*" (Our emphasis.)

In a number of Federal Court decisions interpreting and applying the foregoing Act, and a previous Executive Order of 1941, No. 9001, 50 U.S.C.A.Appendix, § 611 note, it was held that contingent fee contracts by "free-lance" procurement agents were unenforceable. See Le John Manufacturing Co. v. Webb, 95 U.S.App.D.C. 358, 222 F.2d 48, 51; Mitchell v. Flintkote, 2 Cir., 185 F.2d 1008, 1009; United States v. Paddock, 5 Cir., 180 F.2d 121; Bradley v. American Radiator & Standard Sanitary Corporation, 2 Cir., 159 F.2d 39, 41. However, these cases all involved factual situations arising prior to 1950. Regulations of the Department of Defense, issued since 1951 pursuant to authority contained in Executive Order No. 10210, expressly permit contingent fee contracts for persons other than full-time employes, under designated conditions. Code of Federal Regulations, Title 44, sec. 150, 1952 Cumlative Pocket Supplement. Among the conditions are that there be a continuity of relationship between the contractor and the agent, and that the agent

have adequate knowledge of the products and business of the contractor.

Stansbury was a duly qualified, *registered* agent of Vogt Brothers. He was recognized by the Air Force as a qualified manufacturer's representative, and participated in the facilities and services made available by the Air Force for such representatives at Dayton. He maintained a thorough and current knowledge of Vogt Brothers' plant and its operations. He kept informed as to products in which they were interested, and endeavored to obtain for them subcontracts from other contractors, as well as prime contracts directly with the Air Force. He had maintained a relationship with Vogt Brothers over a considerable period of years. At the same time he also represented Reynolds Metals Company at the Dayton air base.

It appears that Stansbury's activities as a manufacturer's representative were carried on entirely in accord with established procedures at the air base for such representatives, and that there was no element of influence-selling involved. It is our opinion that his contract with Vogt Brothers did not violate public policy as expressed in the Congressional Act, the Executive Order, and the implementing regulations of the Department of Defense.

■ Vogt Brothers maintain that a number of errors occurred upon the trial, in the admission of evidence, in the instructions, and in the argument to the jury. The first alleged error was in permitting Stansbury to testify as to the *range* of commissions paid to manufacturers' agents securing contracts from the Air Force. Since the issue in the case was the reasonable value of Stansbury's services, we think it was entirely proper to show the customary fees paid for this general kind of service. No effort was made to testify as to a specific fee paid a specific representative, or for a specific service. There can hardly be any other criterion for measuring the value of services than what others generally receive for generally similar services. See 58 Am. Jur., Work and Labor, sec. 10, p. 518.

■ The second alleged error was in permitting Stansbury to testify as to elements entering into the determination of a reasonable fee, which might warrant a fee in excess of two percent. The contention is that Stansbury had agreed to a maximum fee of two percent, in his original negotiations with Vogt Brothers, and therefore evidence tending to support a higher fee was improper. It is true that Stansbury originally submitted to Vogt Brothers a *written* contract calling for a fee of two percent, but Vogt Brothers rejected this contract, and the ultimate contract entered into was an oral one calling for a "satisfactory" compensation. Therefore, there is no basis for the contention that there was a contractual limit of two percent on the fee. In addition, the evidence hardly could be considered prejudicial in any event, since the jury awarded a fee of less than two percent.

■ The third alleged error was in the admission of testimony concerning activities performed by Stansbury, prior to the procurement of the bomb rack contract, in unsuccessful efforts to obtain other contracts for Vogt Brothers. It is contended that the admission of this evidence had the effect of inducing the jury to make an allowance of compensation for the other, unsuccessful services, whereas Stansbury was entitled to be paid only for his services in connection with procuring the bomb rack contract. The trial court admonished the jury, concerning this testimony, as follows:

"I think at this stage I had better call your attention to a matter. Of course, we are not concerned at all in this case with actuators, or anything other than the contract for bomb racks. The only reason that this is introduced and the only consideration you will give it is on the basis of the witness' explanation that one of the elements going into determining what is fair compensation

for manufacturers' agents' services is the fact that they have to go into many other contracts before they finally arrive at one that is settled. So you will give no consideration at all to the question of actuators or anything else except for the purpose that it may bear, if any in your judgment, on a fair fee that is due him, if any is due, on the bomb racks."

We think the admission of the evidence, with the admonition, was proper. Certainly the difficulty involved in making a successful contract procurement, and the number and nature of unfruitful efforts that must be made before a success is achieved, are proper elements in determining the value of a service of this nature. For example, if real estate agents ordinarily had to make ten unsuccessful contacts before effecting a sale, it would seem that this would be a proper factor in determining the value of the services of an agent, and he should not be limited to the value of the time he spent with the one ultimate buyer.

■ The fourth alleged error was in the admission of testimony, by another manufacturer's representative, as to the nature of the services he performed in endeavoring to procure contracts for his clients. He was put on the stand for the purpose of testifying to the reasonable value of Stansbury's services. It is contended that he should not have been permitted to detail his own activities, because some of the kinds of services performed by him were not performed by Stansbury. However, we think this testimony had no import other than to show the qualifications of the witness as an expert, and for this purpose was not only proper but necessary.

As a fifth ground of error it is asserted that hypothetical questions asked of two expert witnesses were improper, in that they omitted essential parts of the evidence and included certain facts not proved by the evidence, and included irrelevant and incompetent facts. Without going into detail, it is sufficient to say that the omitted facts either were not essential or were embraced by necessary implication; there were no materially unproved or untrue facts included; and the alleged irrelevant or incompetent facts either were in fact competent or were not of material significance nor of a prejudicial nature. A number of specific objections to the questions were sustained by the trial court, and the objections now complained of were not raised specifically below. In addition, the defendant was given and enjoyed ample opportunity of cross-examination.

■ The sixth alleged error was in not permitting the defendant's counsel to ask one of the plaintiff's expert witnesses whether the manufacturer's representative would "have trouble in following his profession" if the contractor falsely certified, on the bid form, that he had not retained any person other than a full-time employe to solicit or secure the contract. We are unable to see how this question could have any material bearing on the issues in the case, and we find no error in the court's ruling. A further complaint, in this connection, is that the court should not have admonished the jury that the fact that Vogt Brothers certified, on their bid form, that they had not employed a manufacturer's representative, was *not conclusive* on the question of whether or not they had in fact entered into a contract with Stansbury. We think the admonition was correct, and properly was given.

As a seventh ground of error it is asserted that the instructions were erroneous, in that they permitted the jury to allow Stansbury compensation for all the services he performed, instead of limiting recovery to the services performed in connection with the bomb rack contract. We have read the instruction and we do not find it susceptible to the construction placed upon it by the appellant.

■ Finally, it is contended that error occurred in connection with the argument to the jury. Counsel for plaintiff, in his argument, said that counsel for defendant

had "tried to intimate" that a certain colonel at the base in Dayton "had something to do with the cancellation of part of the (bomb rack) contract." Objection was made on the ground that there was nothing in the record to support such a statement. The objection was overruled and a request by defendant's counsel to be heard in chambers also was overruled. The statement in question, when considered in the light of the entire record, and in context, was of no significance and could not have been prejudicial. Its unimportance was such that neither the sustaining of the objection, nor the granting of the requested conference in chambers, was required.

Upon the whole record we find no prejudicial error.

The judgment is affirmed.