RACQUET CLUB, INC., Defendant,
Appellant,

v.

Arthur LIPPER, III, Plaintiff, Appellee.

No. 6717.

United States Court of Appeals
First Circuit.

March 14, 1967.

Joseph T. Wynne, San Juan, P. R., for appellant.

Stanley L. Feldstein, San Juan, P. R., with whom Nachman, Feldstein, Laffitte & Smith, San Juan, P. R., was on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

This case arises out of a contract in which appellant Racquet Club, Inc. agreed to pay appellee Lipper a contingent commission of 4% on any funds [1] raised to finance certain construction projects that Racquet Club was about to undertake. Among appellee's efforts [2] to raise funds was an inquiry at the Department of Commerce about the possibility of a loan from the Area Redevelopment Administration (ARA). This conversation led to an application by Racquet Club to ARA, seeking a second mortgage loan of $1,600,000. Following ARA authorization of this loan, appellee sued for payment of a $64,000 commission and obtained judgment, from which Racquet Club appeals.

1. The contract was in writing, and more narrowly expressed than "any funds." Appellant took the position, which we do not find necessarily unreasonable, but which the jury did not accept, that the loan here in question was not covered. This issue is not before us.

2. Appellee made other efforts, but they proved fruitless.

The principal contention on appeal is that the payment of a contingency commission for obtaining a loan from the federal government contravenes public policy, and that an agreement to pay such a commission should not be enforced by the courts. We hold that there is no such general proposition of law, but that a published regulation of the Small Business Administration (SBA), prohibiting the payment of commissions in connection with loans in which SBA participates, is applicable to this case and bars appellee's recovery.

A century ago the Supreme Court held that a promise to pay a fee contingent upon success in financial dealings with a government agency was void as against public policy. Providence Tool Co. v. Norris, 1864, 2 Wall. 45, 17 L.Ed. 868. Since that time, however, as more sophisticated situations have arisen, the rule has gradually developed that, in the absence of statute or regulation, courts will decline to enforce contingent fee contracts only when an attempt to "introduce personal solicitation and personal influence" into dealings with government is actually intended or in fact results. Coyne v. Superior Incinerator Co., 2 Cir., 1936, 80 F.2d 844. Compare Oscanyan v. Arms Co., 1880, 103 U.S. 261, 26 L.Ed. 539 (refusing enforcement after improper influence exercised), with Valdes v. Larrinaga, 1914, 233 U.S. 705, 34 S.Ct. 750, 58 L.Ed. 1163 (enforcing contract despite past possibility that plaintiff would use improper influence). The record in this case suggests no basis for concluding that any attempt was contemplated or made. Hence the contract is not void under any general principle of federal common law.

At the same time that the courts have refined the rule announced in *Providence Tool Co.*, they have recognized a power in the executive to declare certain fees paid in connection with defined categories of contracts to be in violation of public policy, see, *e.g.*, Browne v. R & R Engineering Co., 3 Cir., 1959, 264 F.2d 219, and have held that a valid declaration to that effect will defeat a contracting party's attempt to recover the forbidden commission. Browne v. R & R Engineering Co., supra; Le John Mfg. Co. v. Webb, 1955, 95 U.S.App.D.C. 358, 222 F.2d 48. In other words, the executive agencies may, if they see fit, proscribe in advance what they reasonably fear to be dangerous liaisons.

Concededly, ARA has adopted no presently pertinent regulation.[3] We may assume, in agreement with appellee, that the notation in the application itself that contingent fees of any kind were forbidden is without legal significance in the absence of a supporting statute or regulation. However, we believe that appellee is precluded by the SBA regulation, 13 C.F.R. § 122.7–15, which forbids the payment of any fee or commission in connection with obtaining "loans from SBA or loans in which SBA participates." We find SBA's connection with this loan so substantial that it was appropriate for it to protect the integrity of its employees by preventing conceivable exposure to fee brokers who might be tempted to "split fees."[4]

3. ARA does have a regulation, 13 C.F.R. § 304.2, requiring applicants to name all persons employed to perform services in connection with the loan application. We place no reliance upon this regulation; nor do we attach significance to appellant's failure to list appellee in the application. Whether the reason for this failure was the good faith belief that appellee's contract did not extend to this loan, see fn. 1, supra, or the fear that the disclosure would jeopardize the loan, this unilateral act of appellant cannot affect appellee's contractual rights.

4. Appellee points out that it was not, ultimately, SBA money that was borrowed; from this he argues that SBA, having no personal stake, correspondingly had no interest in whether the lender's security was impaired by the payment of a part of the capital to a broker. This misses the point; the obvious purpose of the regulation of brokerage fees is not, or is not merely, to prevent the capital from being overspent, or unnecessarily spent, but to promote the integrity of the process leading to the loan. Comparable restrictions have often been imposed in non-

It is true that ARA and SBA are distinct bodies, created by different legislation. ARA is an agency within the Department of Commerce; the older SBA is an independent executive agency. By virtue of ARA's authorizing legislation and regulations, however, the two agencies work together on loans of the type involved here. ARA was instructed by Congress that, in order to avoid duplication of existing facilities and staffs, it should delegate its assigned tasks to other appropriate agencies, on a reimbursable basis, wherever possible. 42 U.S.C. § 2521. In pursuance of this dictate the Secretary of Commerce, by regulation, 13 C.F.R. § 301.55, delegated to SBA substantial duties and powers with respect to loans under 42 U.S.C. § 2505. SBA not only makes the actual loan, subsequently reimbursed out of ARA appropriations, but is responsible for important factual determinations and the exercise of expertise. Thus it must decide, among other things, that no adequate private or other federal assistance is available to the borrower; that federal assistance does not exceed 65% of the cost of acquisition and development; that monies are in fact being supplied from certain other sources to meet the rest of the cost; and, most important, that there is reasonable assurance of repayment.

There is no unfairness in applying SBA regulations. It is made clear to a loan applicant at the outset, as the record in the case at bar demonstrates, that he is dealing with both agencies. After preliminary approval by ARA, the applicant is told that his application is to be submitted to SBA, and that he is to "discuss financial problems" with that agency, and that his final assurance that a loan will be forthcoming will be by a signed agreement with SBA on terms and conditions which that agency will make known to him.

 Appellee contends that the SBA regulation is nevertheless inapplicable to this case because neither the ARA statute nor its regulations delegate to SBA any power to make regulations applicable to ARA loans. We hold, however, that the congressional directive to ARA to promote efficiency by delegating tasks to existing agencies is not simply to borrow manhours and office space, but to adopt existing administrative machinery as a whole whenever possible. The SBA regulation, designed to prevent the exercise of "personal influence" upon its own staff, must be held to be applicable here.

The judgment of the District Court is vacated, and judgment is ordered in favor of the defendant.

---

loan situations; see 41 U.S.C. § 254(a); Executive Order No. 9001, 50 U.S.C.A. App. § 611 note. Such restrictions have, so far as we are aware, uniformly been held to have the purpose of preventing the intrusion of "personal influence" upon government discretion. See Le John Mfg. Co. v. Webb, supra, 95 U.S.App.D.C. 358, 222 F.2d at 50.